JOHN H. ELA, Plaintiff, *vs.* JOHN D. WELCH, WILLIAM
D. BIRD, JAIRUS C. FAIRCHILD, JONATHAN
LARKIN, PHILETUS S. NOTT, SETH
BARTLETT and DANIEL WILLIAMS.

ERROR TO CIRCUIT COURT, DANE COUNTY.

Heard August 13.]                    [Decided November 4, 1859.

*Execution—Sheriff—Supersedeas—Stay of Proceedings—
Levy.*

The sheriff having levied on personal property by virtue of an execution,
which, before sale, is superseded by bail on error, is not liable to an action
for having released the levy and returned the property to the judgment
debtor.

The statute allowing bail to be given, and a *supersedeas* to be issued has
changed the common law, if such it were, requiring the sheriff, who made
the levy before he is served with the *supersedeas*. The *supersedeas* puts an
end to the execution, and all proceedings under it are thenceforth stayed.

The *supersedeas* provided by statute puts an end to the execution, and all pro-
ceedings thereon are stayed.

Where an officer returns an execution levied, and stopped or stayed by injunc-
or *supersedeas*, such return imports a cessation of the levy, and a release
of the property seized.

The intent of the statute providing for bail or bond on error, was to provide
. ample security for the judgment, and to protect or release the property of
the judgment debtor from execution. .

This is an action brought against the defendants, by the
plaintiff in error. The complaint alleges that John D. Welch,
·one of the defendants in error, was duly elected sheriff of
Dane county, and sets out his official bond, signed by the
other defendants, as his sureties, and alleges that Andrew
Bishop was duly appointed under-sheriff by said Welch, &c.
That on the 17th of November, 1857, Ela, the plaintiff, re-
covered judgment against Emory B. Broderick, Samuel Har-
ris and Joseph Jenkins, in the circuit court for Dane county,
for $237 31, which was on that day duly docketed. That on

the 24th of February, 1858, execution was issued to the sheriff of Dane county, setting out the same at length, and was delivered to the under-sheriff Bishop, to be executed according to law. That the under-sheriff, by virtue of the execution, levied upon a certain lot of hides, the property of one Joseph Jenkins, in the writ named, of the value of $300. That the under-sheriff wrongfully neglected to advertise and sell the same, to satisfy the execution, and that he wrongfully suffered and permitted Jenkins to take the property so levied on, and to sell and convert the same to his own use, whereby the plaintiff lost the benefit of the levy, and was wholly unable to collect his execution, as he otherwise would have done.

The defendants answered, denying every allegation in the complaint, except that John D. Welch was sheriff, and Andrew Bishop was under-sheriff. That the execution in the case named in the complaint was delivered to the under-sheriff to be executed. That neither the plaintiff nor his attorneys pointed out any property, or directed the sheriff to levy on any particular property, as the property of the defendants therein. That in pursuance of the direction and command of the writ, the under-sheriff levied upon a quantity of hides at the farm of Jenkins, as the property of Jenkins. That the property was not worth more than $100. That by direction of plaintiff, and by and with his consent and approval, the hides were left with Jenkins. That the under-sheriff advertised the same for sale; but before the day appointed for the sale, Chadwick, Harris and Jenkins sued a writ of error out of the supreme court, on the judgment on which the execution was issued, and gave the security required by law to supersede the execution. That a certificate of the issuing of the writ, and the filing of the bond, under the seal of the supreme court, was duly served on the under-sheriff, whereby the action of Ela against Chadwick, Harris and Jenkins, was removed to the supreme court; and proceedings on and under the execution were superseded and stopped, and the levy on the property released; That the under-sheriff made due return of the execution, together with the certificate, in accordance with the above facts.

They further allege that the hides levied upon were green hides, and perishable property, and that the same could not be kept and preserved during the pendency of the writ of error. And, further, that no steps have been taken to collect

Ela vs. Welch, et al.

said judgment since the removal thereof to the supreme court.

The issue thus joined was tried by the court, who found the facts as averred in the answer, and as a conclusion of law found that the service of the *supersedeas* did supersede the execution and any levy that was made under it, and that the defendants are entitled to their costs herein to be taxed, for which judgment is ordered.

From that judgment this writ of error is brought.

*Abbott, Gregory & Pinney*, for the plaintiff in error.

*Welch & Lamb*, for the defendants.

*By the Court*, PAINE, J.    This case presents but one question.    That is, whether a sheriff, having levied on personal property by an execution, which, before sale, is superseded by bail on error, is liable to an action for returning the property to the judgment debtor.    The counsel for the plaintiff in error contended that the effect of the *supersedeas* was simply to stop proceedings, leaving every thing in the precise condition existing at its service; and that the levy having been previously made would continue, and it would be the duty of the officer to detain the property.    A number of authorities were cited, showing that at common law a writ of error, if served after a levy made, would not prevent the officer from proceeding to a sale, and that the effect was the same after the statute requiring bail on error.    Among these, the case of *Beatty vs. Chaplaine*, 2 Har. & John. Rep., 7, contains a very elaborate examination of the whole subject. But these authorities go too far for the purposes of the plaintiff in error here.    For they hold that the officer must proceed to sell, notwithstanding the *supersedeas*, upon the ground that an execution is an entire thing; and when partly served it must go on without being interrupted.    But it is conceded that our statute does stay the proceedings, and that after the *supersedeas*, even though there has been a levy, yet the officer

cannot sell, or take any further steps in the matter. Applying therefore the reasoning in these decisions to the conceded effect of our statute, it would seem that the entire execution must fall. For if being partly served, it must be so entirely, notwithstanding a *supersedeas,* on the ground that it is an entire thing ; by the same reasoning it would follow that when our statute partly destroys it, it must annul it entirely because it is an entire thing.

But without entering into any very critical examination of the authorities, we think this question is to be determined by the obvious intention of the provisions of our statute. Sec. 2, chap. 104, of the Revised Statutes of 1849, provides that "no writ of error shall operate to stay or supersede the execution," unless bond is given, &c. The implication is clear that if the bond is given it shall supersede it. And to supersede is to make void or inoperative by a superior authority. Sec. 4 provides that if the bond is given and approved as required, if execution shall have been issued, upon serving on the officer a certificate of the clerk to that effect, "all further proceedings shall be stayed." There may possibly be a stay of proceedings on an execution which would not amount to a *supersedeas.* But, taking both these sections together, it is clear that the stay of proceedings provided for in the fourth section is intended to have all the effect of a *supersedeas* upon the execution, and that this section was enacted to remedy the very evil arising from the decisions to which we have referred.

When the statute required bail on error to stay proceedings, it intended that as the security for the judgment. If the plaintiff has issued no execution, he cannot issue one. Why? Evidently because the statute intended to enable the defendant to protect his property from seizure, by giving what it deemed adequate security. But notwithstanding this statute, the courts held that if the plaintiff had issued his execution

and seized the property first, then it should be sold although bail was put in on error.  To remedy this the provision of our statute was enacted.  And we have no doubt that when bail has been put in and approved, as required by law, that upon service of the certificate upon the officer holding an execution, its entire effect and operation is destroyed, and it is the duty of the officer to return the property to the judgment debtor.  If it were otherwise, the greatest inconvenience and injustice would result.  The property levied on might be of ten times the value of the judgment, and yet the defendant would have no means of releasing it.  It might be live stock in which event the expense of keeping might, before the determination of the suit, exceed its value.  These considerations would seem to preclude the idea that the legislature could have intended, after requiring the party to give ample security for preventing a sale of his property, that the sheriff should hold it on a superseded execution, through all the time to which the "law's delay," might extend the litigation.

Some support for this view of the intention of the statute may be derived from the provisions in respect to liens upon real estate.  Here the lien is created by the judgment, yet by the existing law, after a judgment is secured on appeal, a party may, by application to the court, procure a discharge of the lien of the judgment, as against subsequent *bona fide* purchasers.  And the reasons for holding that security on appeal, discharges a levy on personal property, are much stronger than any that exist in favor of its releasing the lien of a judgment on real estate.  For in the latter instance the possession is not divested, the property is not tied up and made useless to both parties, and there is no danger that the expense of keeping may exceed its value.

And the view we have taken has been held by other courts. In *Walker vs. McDonnell*, 4 Smedes & Marshall, 118, the question arose, and the court said the practice had always

Ela vs. Welch, et al.

been in that state, on a *supersedeas* after levy, to return the property to the defendant. And though they did not deem it necessary to decide it in that case, yet their language indicates that, if necessary, they would have held it legal. In the case of *Lessee of Brisbee vs. Hall*, 3d Ohio, 449, the question was whether it was lawful for the sheriff to return property to the owner after his execution was stayed by injunction. The court says: "It was lawful for the sheriff, upon the service of the injunction, to re-deliver the goods to the owner. The injunction bond was substituted for the plaintiff's security. For the sheriff to retain the goods might enforce a great loss upon him, or upon the defendant, by the natural decay of the goods, by their accidental loss, or by the charge of keeping them, as in the case of live stock. The case is very different from that of a levy on land, which is not perishable, and where the debtor's possession is not divested by the levy."

In *Eldridge vs. Chambers*, 8th B. Mon., 411, the sheriff had returned an execution, "stayed by agreement of parties," and the question was, whether this return imported a continuance of the levy or not; and in deciding it, the court states what we conceive to be the exact effect of a *supersedeas* upon an execution. They say: "Does this return indicate a continuance of the levy, or, on the contrary, the release of the property levied on, and its restoration to the defendants in the execution? When an officer returns an execution levied, and stopped or stayed by injunction or *supersedeas, the return imports a cessation of the levy and a release of the property.* Why should not a return that the execution, after having been levied, was stayed by agreement of the parties, have the same meaning and effect? We think it does. The execution of the process is evidently stopped. When its execution is stopped, no further action can be had either on it, or by any other action for its enforcement. The levy ceases, the lien is lost, and the plaintiff has to sue out another execution."

Ela vs. Welch, et al.

In *Conway vs. Jett,* 3 Yerg., 481, it is recognized as proper practice where an execution is enjoined after levy, and security given, to return the property to the debtor. And *Hamilton vs. Henry,* 5 Iredell, 218, sustains the same rule. And we do not readily see how any other practice could be sustained. No case was cited which explained, and it is somewhat difficult to imagine by what authority an officer would detain property, perhaps for several years, after his writ was superseded and had expired.

The counsel for the plaintiff in error contended that the levy ought not to be held released by a *supersedeas,* because the bond given was only conditioned to pay the judgment rendered in the appellate court, which he claimed would be only for the costs and damages allowed in that court. But we think this view cannot be sustained. It is obvious, with that construction of the condition of the bond, that in all cases where the *supersedeas* was served before a levy, the proceedings would be stayed, and yet the plaintiff have no security for his judgment, which the statute certainly never intended. The judgment here, in such cases, is not simply for costs, but it is also for the affirmance of the judgment below, which is a re-assertion of that judgment. And it would be too great a strictness of construction to say, that a bond conditioned to pay the judgment rendered here, would not include the amount of the judgment affirmed.

We think the clear intent of the statute was to provide ample security for the judgment, and then to protect or release the property of the judgment-debtor from execution.

The judgment of the county court is affirmed with costs.