328

City of Milwaukee, Respondent, vs. Taylor and others, Defendants: Ticonic Investment Company and others, Appellants. [Three cases.]

*October 14—November 9, 1938.*

For the appellants Ticonic Investment Company and Hanawa Company there were briefs by *Upham, Black, Russell & Richardson,* attorneys, and *Fraley N. Weidner* of counsel, all of Milwaukee, and oral argument by *Mr. Weidner.*

For the appellant Wadhams Oil Company there were briefs by *Fish, Marshutz & Hoffman,* attorneys, and *I. A. Fish* and *Alexander Cannon* of counsel, all of Milwaukee, and oral argument by *Mr. Fish.*

For the respondent there was a brief by *Walter J. Mattison,* city attorney, and *Ronold A. Drechsler* and *Harry J. Burczyk,* assistant city attorneys, and oral argument by *Mr. Drechsler* and *Mr. Burczyk.*

A brief was also filed by *Miller, Mack & Fairchild* of Milwaukee, as *amici curiæ.*

ROSENBERRY, C. J.  By paragraph 1 of the complaint in City of Milwaukee v. Ticonic Investment Company it is alleged that plaintiff has decided that it is necessary to take by eminent domain under ch. 275, Laws of 1931, the following described property to complete the widening of East and West Kilbourn avenue between North Ninth street and North Prospect avenue and including a part of Juneau park by widening West Kilbourn avenue between North Sixth street and North Ninth street and East Kilbourn avenue between North Broadway and North Prospect avenue and including a part of Juneau park in the Third and Fourth wards of the city of Milwaukee, to wit: (Legal description of the property.)

Paragraphs 2 and 3 relate to the taking of certain excess areas under the same chapter, the property to be taken being

particularly described in the paragraphs. It is alleged that the aforesaid property is required for the purposes of said corporation, and that it is the intention of said corporation in good faith to use said property as therein stated.

Paragraphs 4, 5, and 5a are allegations relating to the identity of the defendants, owners of property and persons having an interest in the property above described, including appellant.

Paragraph 6 relates to certain tax liens for city taxes for 1937.

Paragraph 7 relates to city tax liens on certain property for taxes sold and the interest thereon.

Paragraphs 8 and 9 relate to certain tax liens owned by the county of Milwaukee for taxes sold and interest thereon.

Paragraphs 10, 11, 12, 13, 14, 15, and 15a, which was inserted by amendment, relate to certain property already acquired by the city, which property it is alleged was necessary fully to complete the plan for the widening of East and West Kilbourn avenue, and it is alleged that no special benefits to the property situated within the district have heretofore been assessed against any property benefited, and it is proposed to include in the assessment of benefits a part of the cost of said property already acquired exclusive of the cost of the bridge. (For the purposes of this case it is not necessary to state the facts in relation to such property with full particularity. They are fully set out in the complaint.)

It is alleged:

"That thus far no benefits have been assessed against the property benefited by the widening heretofore made, or by said bridge heretofore constructed although special benefits were created by such widening and bridge and it was the desire and intention of the plaintiff to assess special benefits for such widening upon the completion of the widening of said street in the future beyond to the west of North Sixth street and to the east of North Broadway; that such special benefits are to be assessed under said plan."

Paragraph 15a is as follows:

"That on April 5, 1932, at the spring election in 1932 the electors of the city of Milwaukee, being a city of the first class, adopted the provisions of chapter 275, Laws of Wisconsin, 1931, by a majority vote of the electors voting thereon, 102,566 voting for adoption and 49,518 voting against adoption.

"That prior to April 5, 1932, and subsequent to January 1, 1926, East and West Kilbourn avenue was widened between North Sixth street and North Broadway as in paragraph 15 hereof is alleged. That such widening was made pursuant to ordinance No. 120 adopted October 16, 1924, and pursuant to ordinance No. 234 adopted January 16, 1928, in which ordinances provisions were made for the assessment of benefits arising from the improvement or improvements therein provided for. That the land required for the widening so made was thereafter acquired pursuant to and following the adoption of resolutions file No. 31,964 adopted on March 29, 1926, and June 21, 1926. That thereafter, on October 22, 1928, the common council adopted a resolution adopting a plan for the widening project and instructed the commissioner of public works to proceed with the assessment procedure. That no assessments were made, levied or collected, although it was and is the desire and intention of the plaintiff to assess special benefits for such widening.

"That the cost of the property acquired and used in such widening so made was taken out of what is now known as the Kilbourn avenue widening fund. That said fund consists and consisted of proceeds from the sale of certain bonds dated July 1, 1920, and July 1, 1922. That principal and interest due on said bonds have been paid or will be paid out of the principal on the funded debt fund and out of the interest on the funded debt fund, the proceeds of which are derived from separate tax levies therefor included in the annual city tax levy. That the moneys to be collected by the assessments to be made for the widening of East and West Kilbourn avenue heretofore made and to be made pursuant to the proposed plan will be credited to said Kilbourn avenue widening fund."

The answer admits that the plan referred to in the complaint includes property previously acquired and used in the widening of East and West Kilbourn avenue between North Sixth street and North Broadway, but denies that the widening of Kilbourn avenue from North Sixth street to North Broadway—

"was done as a part of a larger plan of widening Kilbourn avenue between North Ninth street and North Prospect avenue and Juneau park;"

alleges that the widening of Kilbourn avenue between North Sixth street and North Broadway was done as a separate project and was paid for as such separate project; admits that previous widening together with bridge across the Milwaukee river is included in the present plan; denies that no special benefits have heretofore been assessed against any of the property benefited; denies that no benefits have been assessed against property by the widening previously made, and denies, on information and belief, that it was the desire and intention of plaintiff to assess special benefits for such widening upon the completion of said widening in the future beyond, to the west, of North Sixth street and to the east of North Broadway; admits that it is the intention to assess special benefits for such previous widening under the present plan.

The answer sets out many other facts which it is not necessary to state with particularity in order to dispose of the issues raised on this appeal. Where necessary, reference will be made specifically to such allegations.

The plaintiff demurred to the answer. The trial court held upon the demurrer to the answer that the issues raised thereby were identical with those raised by the demurrer to the complaint and sustained the demurrer to the answer on the same grounds on which it overruled the demurrer to the complaint. In order to understand the issues presented it is

necessary to give a short history of the project under consideration.

On April 6, 1920, the plaintiff city passed an ordinance adopting a plan for what was known afterward as a civic center. In order to locate all of the public buildings in the city and county on the west side of the Milwaukee river and for opening squares and broadening streets leading to the so-called civic center, on September 12, 1924, the commissioner of public works recommended to the city council that it adopt a general plan for the extension of Prospect avenue to Biddle street (now East Kilbourn avenue) ; the widening of Biddle street by eighty feet; the building of a bridge connecting Biddle street and Cedar street (now West Kilbourn avenue) ; the widening of Cedar street by eighty feet; the acquisition of a civic center bounded on the east by Sixth street, on the south by Wells street, on the west by Ninth street, and on the north by State street; the widening of Ninth street from Grand avenue to Prairie street by sixty feet; the widening of Prairie street from Ninth to Sixteenth streets by at least sixty feet. The commissioner also recommended that the park board connect Prospect avenue and Biddle street at the intersection of Biddle and Astor streets; that Biddle street should be widened by eighty feet from Astor street to the river; that a bridge should be built across the river connecting Biddle and Cedar streets; that Cedar street should be widened; that the city should proceed to acquire all the property for the civic center; that Ninth street should be widened from Grand avenue to Prairie street; that Prairie street should be widened from Ninth street to Sixteenth street; that Cedar street should have three traffic lanes, approximately one hundred feet wide; and that all such streets should be paved, drained, lighted, and beautified.

On October 16, 1924, the common council by ordinance adopted the report of the commissioner and directed the making of the improvements mentioned. On April 7, 1925,

at a special election, the electors of the city of Milwaukee repealed the ordinance committing the city of Milwaukee to the grouping of the buildings and to such civic-center project. On March 29, 1926, the ordinance adopting the plan, which included the widening of Cedar street, the acquisition of the property to the civic center, and all the other projects relating to the civic center, was repealed.

On the same day, March 29, 1926, the common council by resolution determined that it was necessary to condemn property for the widening of Cedar street 'from Sixth street to the river by extending it fifty feet on the south side thereof and Biddle street from the river to Broadway by extending it fifty feet on the north side thereof. It directed the city engineer to furnish to the city attorney descriptions of the real estate involved, and instructed the city real-estate agent to make efforts to buy the same.

On June 21, 1926, the report of the committee upon this proposal was approved and the proceedings went forward. An action having been commenced in the circuit court for Milwaukee county, on July 10, 1926, the commissioners reported on March 8, 1927; the assessments of benefits and damages were filed on February 1, 1927. In this assessment the benefits received from the widening were offset against the damages. The cost of paving was assessed against the abutting lands.

On January 16, 1928, the common council adopted an ordinance amending the ordinance adopted October 16, 1924, which ordinance had been repealed by ordinance adopted March 29, 1926, so as to change the widening of Cedar and Biddle streets from an additional eighty feet to an additional fifty feet and further provided:

"The said ordinance is ratified, amended, re-enacted, confirmed and approved to any such extent and to every extent as shall be necessary to give full force and effect to this amendment so that the widening of Biddle and Cedar streets

shall be a part of said plan only to the extent of a widening to an additional width of fifty feet, although the original recommendations of the commissioner of public works and the original ordinance did include a widening to the extent of an additional eighty feet."

On February 13, 1928, the council expressed its determination to get as much as possible out of the so-called recoupment taxes for the value of improvements that had theretofore been made. The widened street was opened for use from Broadway to the river on October 17, 1928, and from Plankinton avenue to Fifth street on November 24, 1928. The bridge was opened June 15, 1929.

On October 22, 1928, a resolution was passed by the council reciting that it was necessary to adopt a plan in accordance with ch. 347, Laws of 1923, and the council therefore adopted a plan to widen Biddle and Cedar streets from Astor street to Sixth street; build a bridge across the Milwaukee river; acquire title to certain lands at the east end of Biddle street, trade land under Juneau place to the park board for rights of way for Prospect avenue through the said blocks, which blocks were to be used as a part of Juneau park; set back the curb lines on Cedar and Biddle streets. Upon the adoption of this plan the commissioner of public works was instructed to proceed with the work of making the assessment. On January 28, 1929, another resolution was adopted reciting the consensus of opinion of the common council that the assessment should be levied for the project laid out in the preceding resolution, but that because of the derelictions of the bench and bar they have been unable to get a determination of the validity of such assessments, and as the widening of Cedar street and the bridge was nearing completion (all but one block of the streets had been opened for use before this resolution was passed), and that Biddle street was completed, it was directed that the commissioner of public works make a tentative assessment of benefits to be

derived from the improvements. On October 21, 1929, the resolution was passed directing the commissioner of public works to complete the assessment provided for in the foregoing resolution. On October 6, 1930, the mayor reported that he had requested the commissioner of public works not to return the assessment. On September 4, 1934, the common council reported that the assessments and the communications of the mayor be placed on file. This recommendation was adopted on the same day.

In the meantime, ch. 275, Laws of 1931, had been enacted, this law going into effect on June 19, 1931. On June 25, 1934, the common council passed a preliminary resolution under the Kline law, directing the drafting of a tentative plan for the widening of Kilbourn avenue from North Ninth street to North Sixth street and from North Broadway to North Astor streets. On March 15, 1937, the present plan and tentative assessment was approved, and the city attorney was directed to proceed with the condemnation of property needed to carry out said plan of widening said street. The common council by this resolution determined that forty per cent of all previous work done should be assessed against an assessment district in proportion to the benefits received,—a tentative assessment of benefits being shown by the map attached. These benefits, including the cost of the acquisition of lands under the previous proceedings, included one half of the block on which the Safety building is erected, a part of three blocks of land acquired for Juneau park under previous proceedings, and part acquired by condemnation and paid for out of the general funds for the widening of Kilbourn avenue. The map reproduced herewith shows the lands previously acquired to be paid for in part by the assessment, being the lands on the north side of East Kilbourn avenue and on the south side of West Kilbourn avenue between North Sixth street and North Broadway.

Attention is again called to the fact that what was formerly Cedar street is now West Kilbourn avenue and what was formerly Biddle street is now East Kilbourn avenue.

It will be noted from the foregoing that plaintiff now proposes, if a favorable verdict of necessity is returned, to assess upon the property within the assessment district forty per cent of the cost of the property already acquired for the widening of Kilbourn avenue from North Ninth street to Juneau park as well as the cost of property hereafter to be acquired by the city pursuant to the resolution adopted March 5, 1937.

This procedure is attacked upon the grounds: First, that ch. 275, Laws of 1931, is unconstitutional, (a) because it does not conform to the rule of uniform taxation prescribed by sec. 1 of art. VIII of the Wisconsin constitution; (b) that the verdict prescribed by ch. 275, Laws of 1931, is not such as is required by sec. 2, art. XI of the constitution; second, that if the act be otherwise valid that provision which authorizes the inclusion of a part of the cost of property acquired for prior improvements which have been paid for out of the treasury of the city is invalid because it operates to recoup the city treasury and is therefore a general tax and must be uniform.

## I.

It is considered that the first contention of the defendant is not sound. It is based upon the following propositions: In *Milwaukee & Mississippi R. Co. v. Board of Supervisors of Waukesha County,* 9 Wis. 399, it was held that under sec. 1, art. VIII, property might be classified for purposes of taxation and that taxation need be uniform only within class. In *Knowlton v. Supervisors of Rock County* (1859), 9 Wis. *410, the proposition in regard to uniformity announced in the *Milwaukee & Mississippi R. Co. Case* was overruled, and it was held that taxes on property which was taxed at all must be by one rule and uniform.

In *Weeks v. Milwaukee* (1860), 10 Wis. *242, it appears that the city of Milwaukee had levied special taxes upon certain lots for the purpose of building streets and sidewalks in front of the property taxed. The assessment was attacked on the ground that it did not conform to the rule of uniformity. The court held that the levying of such special taxes could not be upheld under the constitution of the state of Wisconsin considering only the rule of uniformity. The court referred to sec. 3, art. XI, which then provided:

"It shall be the duty of the legislature, and they are hereby empowered, to provide for the organization of cities and incorporated villages, and to restrict their power of taxation, assessment, borrowing money, contracting debts, and loaning their credit, so as to prevent abuses in assessments and taxation, and in contracting debts, by such municipal corporations."

The court said (p. *260):

"This system of special taxation, upon the basis of supposed special benefits, had existed for years, and given rise to much discussion and litigation in the older states. Although, in itself, being strictly an exercise of the taxing power, yet it has been frequently assumed otherwise, and has been so far separated and distinguished from general taxation, as to have obtained a distinct name, and that name, assessment. As such it has been known and described for a number of years in the older states, in their contracts, laws, and constitutions. A clear distinction between it and other taxation was established. It seems to me, therefore, that when the constitution expressly recognizes the 'power of assessment' in municipal corporations, it had reference to this system which had been so long known and described under that name."

It was argued that the word "assessment" referred to taxes generally but that was rejected by the court. The court said (p. *261):

"The word 'assessment,' then, includes all the steps necessary to this taxation, just as the word 'taxation' includes all necessary to taxation generally."

The court in effect held that "assessment" is a special form of taxation not subject to the rule of uniformity but based on benefits. That part of sec. 3, art. XI, quoted, was repealed by the adoption of the so-called home-rule amendment in November, 1924, so that the word "assessment" no longer appears in sec. 3 of art. XI, the section upon which the court based its decision.

The defendant argues that the repeal of sec. 3 by the home-rule amendment struck out the word "assessment" from the constitution, and "assessment" being no longer referred to in the constitution, the word "taxation" must now be construed to include every form of taxation and more particularly special assessments. It is to be noted that the word "assessment" was used with reference to the power of the legislature over the affairs of municipal corporations. The constitution did not specifically confer upon cities and incorporated villages the power to make special assessments. That, the court held, was a function which cities and villages had at the time of the adoption of the constitution. The effect of the decision in *Weeks v. Milwaukee, supra,* was to hold that taxation as used in the clause relating to uniformity did not include special assessments because they were already a distinct thing in the law. If the word "taxation" as used in sec. 1 of art. VIII of the constitution in 1860 did not include special assessments, it does not include it now whether the word "assessment" appears in the constitution or not. Certainly no one thought at the time of the adoption of the home-rule amendment that the people were destroying a power and method of assessment which had been recognized and in existence since the adoption of the constitution in 1849. The argument of counsel is ingenious but not persuasive. It is considered therefore that municipalities have the power to levy special assessments based on benefits.

## II.

It is doubtful whether the second question is presented by the record in this case, and if presented at all, it is presented only in a very limited aspect. Ch. 275, Laws of 1931, does not appear in the general statutes, but is to be found in the Milwaukee city charter, ch. 9, and of course in the session laws for the year 1931. Sec. 1 of ch. 275 is a statement of the powers granted under the act. Sec. 2 creates a board of assessments. Sec. 3 provides for the adoption of a preliminary resolution of the council by which the council declares that it deems it necessary to make the particular public improvement. This resolution must be adopted by a three-fourths vote of the members. Sec. 3 (2) provides what may be embodied in the plan.

Sec. 4 (2) provides:

*"Prior improvements.* If, at any time since January 1, 1926, whether before or after the passage of this act, any city of the first class or of any other class shall have partially or wholly completed any one or more of the following particular public improvements, to wit: The laying out, the opening, the widening, . . . of any street [and other improvements] . . . may include in any plan of improvement to be made and adopted under this act the whole or any part or parts of any one or more of the aforesaid particular public improvement or improvements."

Sec. 4 (3) provides:

*"Assessments of benefits.* The value of any property mentioned in subsection (1) of this section, and the cost of any improvement or improvements mentioned in subsection (2) of this section, when included in any plan of improvement adopted or to be adopted under this act by any city of the first class, shall be included in the estimate of the cost and considered a part of the total actual cost of the whole improvement included in any such plan. Special benefits resulting from the improvement included in any such plan of

improvement so adopted, including any improvement or improvements mentioned in subsection (2) of this section and included in such plan, may be assessed against the property benefited thereby in the manner specified in this act; provided, however, that no grading, paving, repaving, curbs, gutters or sidewalks, for which benefits have been legally assessed prior to the adoption of such plan of improvement under this act, shall be considered in making the estimate or the determination of benefits under this act, nor shall the cost thereof be included in such estimate of cost or be considered a part of such total actual cost."

Sec. 5 prescribes the duties of the city engineer in relation to making of surveys, maps, etc. Sec. 5 (2) provides for a report to be made by the board of assessments to the common council, which shall include a tentative plan, a description of the property, and estimate of total benefits, etc. Sec. 5 (3) provides for reference of this report to a committee and for a public hearing. This plan may be altered and may be finally adopted.

Sec. 7 (1) provides that the city attorney shall proceed pursuant to the resolution of the council directing him to do so, to start an action in the circuit court under the code of civil procedure against all persons having an interest in said property—

"for the purpose of establishing the necessity of taking said property by the verdict of a jury as required by the constitution of this state by the service of the usual summons under section 262.03 of the statutes except that in the place of the words in said summons 'judgment will be rendered' the words 'a verdict of necessity will be rendered' shall be substituted."

If upon the trial the jury returns a verdict finding that the taking of the property is necessary, the verdict is to be filed by the clerk of the circuit court and the city is to notify the common council of such filing and of the nature of the verdict. After the verdict has been filed the common council

may then direct the board of assessments to proceed to determine the damages and the amount of benefits within the district, the boundaries of which have been fixed by the plan, and to report the same to the council.

It should be noted that no assessment can be levied until after the verdict of necessity has been filed. The complaint contains an allegation to the effect that no assessment has been levied, but that the city intends to levy an assessment and include therein the things provided for in sec. 4 (2). Under this state of the record we can do no more than determine the validity of the principle upon which the statute is based. No assessment can be passed upon because none has been made. Any determination made at this time will have no application to any specific situation that may arise hereafter except so far as it involves the general principle passed upon. It would probably be wiser for the court to wait until an assessment has been made before attempting to pass upon the question involved, but in view of the long and protracted efforts made by the city of Milwaukee to carry out this great public improvement, we are disposed to go as far as it is possible for the court to go upon this record.

Upon this branch of the case it is contended that a part of the property necessary for the making of the improvement lying between North Ninth street and Juneau park having been acquired by the city prior to the enactment of the Kline law (ch. 275, Laws of 1931), and therefore not included within any plan made pursuant to the Kline law, such property having been paid for out of the general funds of the city, no part of the cost thereof can be included in the assessment of benefits because such inclusion would merely operate to reimburse the city treasury and would in effect be a general tax and therefore within the rule of uniformity.

If the city has the power to levy a special assessment, as we hold it has, for benefits accruing by reason of a public

improvement, we perceive no constitutional objection to including in the special assessment of benefits the amounts paid for property whether the property was acquired before or after the assessment is levied, provided it is a part of an integrated reasonable plan of public improvement and is a proper and equitable charge against the property assessed.

In *Weeks v. Milwaukee, supra,* the court said (p. *261) :

"This provision, then, recognizing the power of assessment in municipal corporations, is so far a modification of the rule of uniformity, as the system of assessment is a departure from that rule. And the principle of it being, as before stated, to compel every lot to build the street in front of it, with such exceptions as are usually provided in cases of extraordinary expense, and which exist in the charter of Milwaukee, it cannot be said that under the constitution construing the two sections together, and giving due effect to both as we are bound to, the legislature has not the power to authorize these assessments. For whatever abuses may be practiced under it, and they are doubtless great, the only remedy is in such restrictions as the wisdom of the legislature may impose on the exercise of the power, and for every citizen of these corporations to faithfully discharge his duty as such, and give necessary attention to the administration of public affairs."

The legislature by the enactment of the Kline law has specifically authorized the inclusion of prior costs in the assessment of special benefits. Not only that, the act provides that it shall not take effect in any city of the first class until it shall have been submitted to the electors and approved by them. It has been submitted to and approved by the people. Furthermore, sec. 42 (2) provides :

"This act shall be liberally construed so that such city shall have the largest possible power and leeway of action under it."

The legislative intention is not left in doubt. The language of the act is clear and explicit. The argument that that part of the special assessment which represents a part of

the cost of property previously acquired will reimburse the general fund is therefore a general tax is plausible but not convincing. As already pointed out, the basis for a special assessment is a special benefit. Whether or not a taxpayer has received a special benefit does not depend upon how or when the city acquired the land necessary for the improvement. We discover no statutory allocation of funds derived from special assessments except for the payment of bonds issued against them. By sec. 6 of the Kline law the city is specifically authorized to acquire property necessary for a public improvement by purchase and "include the cost of such purchased property . . . in the assessment of benefits." If the argument is sound it would apply to sec. 6 as well as sec. 4 (2). It is obvious that it does not apply to either. The assessment is laid because of benefits received and not to recoup the city treasury.

It may well be conceded that the act confers upon the city authorities of cities of the first class much power, and as was pointed out in the *Weeks Case, supra,* that power may be used unwisely, but unless some provision of the constitution can be pointed to which deprives the legislature of the power to enact the law, it cannot be declared invalid. How far back may a city go in including cost of prior acquisitions under sec. 4? Sub. (2) limits the time to January 1, 1926. There is the further, if not clearly expressed, certainly implied limitation that the property taken, the cost of which is to be included in the assessment of benefits, must be a necessary and constituent part of an integrated plan. The language of sec. 4 (2) is "may include in any plan of improvement to be made and adopted under this act," etc.

In considering this phase of the question the trial court, in sustaining the demurrer to the answer, said:

"Perhaps the most outstanding improvement contemplated for many years was the widening of Kilbourn avenue from Ninth street to Juneau park. As pleaded in the

amended answers (par. 14 and Exhibit 'J') the plan in October, 1928, as adopted by the common council was to proceed to make assessment of benefits under sec. 62.23 (ch. 347, Laws of 1923) to (among other things) widen the then Cedar and Biddle streets *'so as to make a wide cross-town artery'* for traffic extending from Prospect avenue and Juneau park to Sixth street. This and other portions of the record clearly indicate that Kilbourn avenue was not regarded as 'an ordinary city street.' But whether such earlier work was done under sec. 62.23 (14) (ch. 347, Laws of 1923) or under ch. 32, it is clear that sec. 4 of the 'Kline' law nevertheless authorized the contemplated special assessment.

"The passage of the 'Kline' law (ch. 275, Laws of 1931) climaxed many years of effort on the part of the authorities of the city of Milwaukee to secure a valid and effective method of making public improvements and an equitable method of apportioning the cost."

It is apparent from a consideration of the map of the assessment district that it will be impossible for the city to have a maximum of benefits from the improvement if any part of the project now embraced by the plan approved by the council on March 15, 1937, is omitted. The property already acquired is an integral necessary and proper part of the whole improvement contemplated by the plan. This appears from a history of the project as well as from the plan itself. While a large discretionary power is committed to the council, it cannot be presumed that it will abuse its discretion. If the people of the city of Milwaukee feel that the council has pursued an improper or unwise course they have a remedy within their own hands. They exercised it on a former occasion.

It is considered therefore that the city may include costs of prior improvements now included within the present plan, although the property necessary therefor has heretofore been acquired and paid out of the general funds of the city. We perceive no ground upon which the taxpayer can legiti-

mately object if he is assessed for special benefits which have been conferred upon him, although the benefit may have been conferred prior to the making of the assessment.

### III.

The validity of the Kline law is assailed on the ground that it provides for no judicial determination of necessity after the controversy has arisen but only provides for an advisory verdict which is not judicial. The case of *State ex rel. Allis v. Wiesner* (1925), 187 Wis. 384, 204 N. W. 589, and *Bangor v. Hussa Canning & Pickle Co.* (1932) 208 Wis. 191, 242 N. W. 565, are cited in support of this proposition. It is argued that under the Kline law the council is permitted to take the verdict of a jury upon a plan which it has not decided to make and that the council may base its legislative determination as to whether or not the improvement should be made in part upon the verdict of the jury. It is considered that this contention is not supported by the authorities cited. Certainly the common council must take the first step before it can take the second. The constitution (sec. 2, art. XI) provides that no municipal corporation shall take private property for public use without the necessity therefor being first established by the verdict of a jury. The taking of property does not occur when the plan is approved but when the assessment made after the verdict is taken is confirmed. The act specifically gives the council the power to abandon the proceeding prior to its confirmation for the reasons stated in sec. 9 (8). The provisions of the Kline law respecting the taking of a jury verdict conform to the doctrine of the cases cited.

*By the Court.*—Upon each appeal, the order appealed from is affirmed.