MARQUETTE HOMES, INC., Respondent, vs. TOWN OF
GREENFIELD, Appellant.

*January 18—February 15, 1944.*

*James P. Taugher* of Milwaukee, for the appellant.

For the respondent there was a brief by *Shea & Hoyt,* attorneys, and *Ralph M. Hoyt* of counsel, all of Milwaukee, and oral argument by *Mr. Hoyt.*

WICKHEM, J.   Brody & Sondel, Inc., were engaged in real-estate development and the building of homes for sale. In 1939 it commenced development of an area near West Allis.   The subdivisions called Broson Manor and Broson Manor Addition No. 1 were platted, the plan being to build and sell completed homes.   The land first platted was in the south half of a quarter section located in the town of Greenfield.   The northeast quarter of this quarter section was owned by Marquette University and the northwest quarter by a family named Miller.   The Brody firm contemplated expanding their project to the north, and in 1940 obtained a verbal option from Marquette University School of Medicine and a written option from the Millers.   The Miller option was exercised in instalments, the first parcel being platted as Broson Manor Addition No. 2 and the next parcel as Broson Manor Addition No. 3.   At the beginning of the development the Brody firm got the approval of the state board of health for the use of septic tanks and installed these for the use of the ninety-nine houses built in the original Broson Manor and in Additions 1, 2, and 3.   By 1940 the working of these tanks had become so unsatisfactory that the state board of health suggested construction of a sewer.   Upon inquiring as to the prospects of getting a sewer and being unable to get a definite

determination by the town, the Brody firm commenced the organization of a sanitary district under sec. 60.301, Stats. Upon presenting the required petition to the county board in June, 1940, the town board expressed itself in favor of putting in its own sewers and addressed a letter to the Federal Housing Administration which was financing the project, stating that the time for completion of the sewer would be not later than January 1, 1941. The project of the town was much larger than the Broson Manor development and covered an area a mile and a half north, a mile south, and seventeen blocks west of that development. Plans, specifications, and estimates were prepared. These called for one run of pipe in proposed South Eighty-Eighth street from proposed West Montana avenue to a point approximately six hundred eighty feet south; a run of pipe in West Montana avenue and easement from proposed South Eighty-Sixth street to proposed South Ninety-First street; and a run of pipe in proposed South Eighty-Sixth street from West Montana avenue to West Cleveland avenue. These courses were not in public streets, but were in land at that time owned by the Millers and Marquette University School of Medicine. On the same day, September 5, 1940, the board passed a resolution approving the plans and specifications and providing that a schedule of benefits to abutting land be prepared and filed and a hearing be held on September 23d to consider objections to the plans and specifications. On September 23d a board meeting was held and it was resolved that no objection to the plans having been made the clerk be instructed to advertise for bids. On November 2d all bids made were rejected and readvertisement for bids ordered. On November 14th a resolution accepting the bid of the Orfei Company was passed, and on November 15th a contract with that company was executed. On November 19th the town engineer filed an estimate of the cost of the sewer. This was put at $211,168.72 and it was proposed to assess private frontage $148,219.06 leaving

$62,949.66 to be paid by the Utility District No. 1 (created in accordance with sec. 66.06 (15), Stats.). On November 20th the town board passed three resolutions. The first certified the above figures to be the cost of the sewer, the amount to be paid by the district and by frontage assessments, respectively, and made assessments on the basis of benefits to the lots listed upon an attached schedule. A notice of hearing on November 20th (the same day) was directed to be given. A second resolution recited that the board had made a final determination of the cost of the sewer, the amount to be paid by the Utility District, and the amount to be paid by the real estate abutting thereon, and resolved that the amounts in the schedule be assessed against the several parcels shown in the schedule. A third resolution recited the filing of the certificate of cost, of the amount to be paid by the district, as well as the schedule of benefits, damages, and assessments. It further recited the fact that a hearing had been held on November 20th and that no one had appeared in opposition. It was resolved that the statement of costs and schedule of assessments be approved, finally determined, and adopted. The property in the Marquette and Miller tracts abutting on the sewer was not included in the schedule of assessments. On October 14th the town had acquired the easement from the Millers without consideration except the stipulated privilege of connecting with the sewer without responding to any assessments for the cost of the sewer. The easement from Marquette was obtained December 12, 1940, upon substantially the same terms.

The Federal Housing Administration made some objections to the language of the Miller easement upon the ground that it was not so worded as to make clear that purchasers from the Millers took free from the assessment. Negotiations were had with the town and the Brody firm offered to contribute $500 toward cost of a culvert in Broson Manor Addition No. 2 if the town would agree to clarify the Miller

easement to the satisfaction of the Federal Housing Administration.

There is evidence from which the trial court could and did find that the town board accepted the proposal at a meeting on January 4th. The contractor proceeded with the laying of the sewers, completing the job about September 1, 1941. In the meantime, the Brody firm, in January, 1941, got a deed from the Millers conveying the balance of their property, and on March 31st and May 28th completed the purchase from Marquette, these purchases being platted as Broson Manor Additions Nos. 5, 6, 7. All of the lots in the three Additions were then sold to Marquette Homes, Inc., a corporation having identical stockholders and officers.

On November 5, 1941, the town board adopted a resolution reciting that the property in Broson Manor Additions 5 and 6 had been omitted from the assessment of November 20, 1940, in order to comply with the statutory exemption from sewer assessments of land used for farm purposes, but that since the land had changed from farm to residential use and was subject to assessment, the board would proceed to assess the benefits to each parcel of land and for that purpose would hold a hearing on November 17th. On November 17th the hearing was held and the sum of $6,158.60 assessed against respondent's lots. The appeal to the circuit court followed. It is beyond question that the assessment was for benefits from the sewer already constructed and in operation under the proceedings heretofore described.

The first question in this case is whether, after a town has fully constructed a sewer, the town board has power to levy special assessments against abutting real estate to reimburse the public treasury for that part of the construction cost which had been paid for with public funds pursuant to a final resolution under sec. 62.16 (6) (i), Stats., determining the amount

to be paid by frontage.assessment and that to be paid out of the public treasury. This is not only the first question but also a negative answer is decisive of this appeal. We conclude that the question must receive a negative answer.

The assessment was made under sec. 62.18, Stats., which, although a part of the city charter law, is made applicable to villages by sec. 61.45 (2) and to towns in Milwaukee county by sec. 59.96 (9) (b). It is clear that the entire power of the town board to make assessments must be found in the above sections, and we have searched these in vain for any authority in the board to disturb the final determination pre-scribed by sec. 62.16 (6) (i). The scheme of the statutes is perfectly plain.

Sec. 62.18 (9), Stats., provides:

"Before any contract for work under this section, to be.paid for in whole or in part by the property to be benefited thereby shall have been entered into, the board of public works shall make an assessment against such property in the manner pro-vided in this section."

Sec. 62.18 (11), Stats., provides:

"After a final determination shall have been reached by the council with respect to the special assessments it shall order the contract for the construction of the sewers in the district to be let in the manner provided by section 62.15."

Sec. 62.16 (6) (j), Stats., after directing that the council (town board) may determine the amount to be paid by the real-estate benefits on account of the improvement, provides:

"(j) When a final determination shall have been reached by the council the city clerk shall publish notice in the official paper of the city once in each week for two successive weeks that a final determination has been made as to . . . the benefits and damages to be assessed to the real estate in case of a proposed improvement."

Sec. 62.16 (6) (k), Stats., provides for appeal by the owner of any parcel of land who feels himself aggrieved.

The portions of the statutes above quoted, far from indicating any authority to revise assessments or to make new assessments after the sewer is laid, evidence a legislative intent that the proceedings leading up to the letting of contracts for such improvements shall be final in every respect. They are so designated by the statute and only by judicial legislation could any further power be vested in the county board. In *Oshkosh City R. Co. v. Winnebago County,* 89 Wis. 435, 437, 61 N. W. 1107, it was said that the power to levy special assessments is purely statutory and that the statutes must be strictly complied with. In 1931 the legislature, in enacting the so-called Kline law, ch. 275, Laws of 1931 (applicable only to the city of Milwaukee), specifically provided in sec. 4 (2) and (3) that if at any time since January 1, 1926, a city of the first class shall have completed one or more of certain described improvements it might include in any plan of improvement to be made and adopted under the Kline act the whole or a part of these existing improvements, and that cost of such improvements could be included in the estimate of the cost and considered part of the total actual cost of the old improvements involved in the plan. It was specifically authorized that assessments for the existing improvements might be made against the property benefited. It appears, therefore, that when the legislature in this one instance desired to authorize frontage assessments for completed improvements in order to reimburse the general fund of the city, it specifically authorized such assessments. Furthermore, it restricted the power very drastically by setting a date after which the prior improvements must have been constructed and by requiring that these improvements be a necessary and constituent part of a larger integrated plan. In *Milwaukee v. Taylor,* 229 Wis. 328, 282 N. W. 448, this

court expressed its view that it was quite extraordinary to grant cities so much power, but sustained its constitutionality, and in doing so put considerable weight upon the restrictions and limitations with which the grant was hedged about.

From all this, we are certain that no power has been granted to the town to make redeterminations of the sort attempted here after the sewer has been constructed, and the certifications and assessments made as heretofore detailed in this opinion. This determination requires affirmance of the judgment and there is, with one exception, no occasion to comment on other contentions made upon this appeal.

Defendant contends that the board had no power to bind the town by an agreement in consideration of the grant of an easement that the land abutting upon the easement should not be assessed for the cost of the sewer. The merits of this contention need not be discussed in view of our determination of the principal question involved upon this appeal, but since a great deal of reliance is put upon certain language in the opinion filed in *George Williams College v. Williams Bay*, 242 Wis. 311, 320, 7 N. W. (2d) 891, we deem it necessary to make a brief comment upon that decision. In that case the property owner granted an easement to the village for sewer purposes and claimed that the village officers had verbally assured him that his assessment for the construction of the sewer would not exceed $10,000. The assessment amounted to $18,824. After allowing the time for appeal to the circuit court to elapse the owner brought suit to vacate the assessment. This court held that the owner's exclusive remedy was by appeal under the statute. In disposing of the owner's contention that the assessment had been procured by fraud and without consideration the court held that the instrument granting the easement being under seal, consideration was conclusively presumed; that there had been no misrepresenta-

tion; that the village had simply given an estimate of the cost. The opinion proceeds: "Furthermore, the village could not lawfully contract to free appellant of the amount of the benefits it received." This statement was unnecessary to the opinion and had no application to the facts of the case since the grant of an easement was not in consideration that the grantor's land be free from assessment. The matter was not briefed and we think that the statement should be withdrawn and the determination of the point be deferred until it is necessary to the disposition of a future appeal.

*By the Court.*—Judgment affirmed.